UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
       SHARON P. PARULAN              )        Case No. 08-10401-SSM
                                      )        Chapter 13
                       Debtor         )

**MEMORANDUM OPINION**

The chapter 13 trustee, Gerald M. O'Donnell, has objected to confirmation of a debt

repayment plan filed by the debtor on January 28, 2008, on the ground that it fails to apply all of

the debtor's projected disposable income to payment of unsecured claims.  Following an

evidentiary hearing on April 9, 2008, the court took the objection under advisement.  For the

reasons stated, the objection to confirmation will be sustained.

<u>Background</u>

The debtor, Sharon P. Parulan, is an administrative assistant for a law firm.  She filed a

voluntary petition in this court on January 28, 2008, for adjustment of her debts under chapter 13

of the Bankruptcy Code.  On her schedules, she listed $29,160 in secured automobile loans and

$164,868 in unsecured debt, most of which apparently arose from a failed business venture.  Her

schedules of monthly income and expenses show gross pay, including overtime, of $7,468 per

month, take-home pay of $4,695 per month, and living expenses of $4,568 per month.  The

separate calculation of current monthly income and disposable income (Form B22C) required by

the Bankruptcy Abuse Prevention and  Consumer Protection Act of 2005 (BAPCPA) shows

1

current monthly income of $7,839 and deductions of $7,261, yielding monthly disposable income of $576.

With her petition, the debtor filed the plan that is presently before the court.  It requires her to pay the chapter 13 trustee $451 per month for 60 months and projects a dividend to unsecured creditors of 14 cents on the dollar.  The plan proposed the surrender of one of the debtor's vehicles, a Mercury Mountaineer, to the secured creditor, with the debtor retaining the second vehicle, a 2004 Mitsubishi, and making monthly payments of $618 per month directly to the secured creditor.   As it turned out, the debtor did not surrender the Mountaineer but sold it the same day the chapter 13 petition was filed for the exact amount due on the loan, which was paid off as a result.[1]  Following the meeting of creditors, the chapter 13 trustee filed the objection that is currently before the court.  It asserts that the debtor, in calculating her monthly disposable income, took an "Improper 22C(47) deduction for monthly payment on vehicle surrendered in the Plan of this case," and that, with the deduction eliminated, the debtor's monthly disposable income was $1,075.

At the hearing, the debtor testified that she had been working at the law firm since February 2007, and that her current annual salary was $70,750.  Her 2007 tax return, she testified, showed gross salary of approximately $77,000.  The debtor further testified that during much of the year, particularly toward the end, the department in which she worked had been very busy and she had been able to earn substantial overtime.  Recently, however, she was told that she would no longer be able to work overtime.

---

[1]  According to the testimony, the purchaser's check was made payable to the lender.  After the lender received the payoff, it mailed the certificate of title to the debtor, who then signed it over to the purchaser.

<u>Discussion</u>

I.

As sometimes happens in chapter 13 confirmation hearings, the issue framed by the objection and the issue actually litigated turn out to be somewhat different.  The sole basis of the trustee's objection was that the debtor, in calculating disposable income, improperly deducted the payments due on a vehicle that the plan proposed to surrender to the secured creditor.  In calculating the amount to be added back, the trustee mistakenly thought that the vehicle being surrendered was the Mitsubishi, which had an average monthly payment of $618, rather than the Mountaineer, for which the average monthly payment was $325.  Even with that correction, the trustee's position, if sustained, would mean that the debtor had disposable income of $90l per month but was making plan payments of only $451 per month.

The debtor, somewhat surprisingly, did not address at the hearing whether she was legally entitled to take a secured-debt deduction for a vehicle that was to be surrendered, but instead argued that the loss of overtime constituted "special circumstances that justify . . . adjustments of current monthly income for which there is no reasonable alternative" as set forth in § 707(b)(2)((B), Bankruptcy Code.

II.

Since 1984, there has been a requirement that a chapter 13 debtor whose plan does not pay claims in full must devote his or her projected disposable income to the plan for 36 months.  § 1325(b), Bankruptcy Code.  Prior to the enactment of BAPCPA, the enforcement of this requirement traditionally centered on an analysis of the schedules of monthly income and expenses (Schedules I and J) filed by the debtor, with the court making adjustments where the

amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive.  Such judgments were often, to say the least, highly subjective, with the result that expenses that might be allowed in one court, or by one judge of a particular court, might be disallowed by another.

BAPCPA did not change this paradigm for debtors whose household income was less than the state-wide median income for a household of the same size.  For above-median income debtors, however, two significant changes were made.  First, the period the debtor was required to pay his or her projected disposable income into the plan was increased from 36 months to 60 months (unless claims could be paid in full in a shorter period).  § 1325(b)(4)(A)(ii), Bankruptcy Code.  Second, disposable income was to be calculated using the "means test" methodology implemented by BAPCPA for determining whether a chapter 7 filing was presumed to be an abuse.  § 1325(b)(3), Bankruptcy Code.  This computation begins with "current monthly income," which is an arithmetic average of the income (with certain exclusions, such as social security benefits) received in the six months preceding the filing of the bankruptcy petition. § 101(10A), Bankruptcy Code.  Deducted from this are the allowances for food, housing, transportation, and other living expenses specified in the Internal Revenue Service collection standards as well as certain additional deductions specified in the statute, including the average monthly payment "contractually due" on secured debts over the 60 months following the date of the petition and the 60-month average of payments needed to cure any petition defaults. § 707(b)(2)(A) and (B), Bankruptcy Code.

A.

In the present case the debtor asserts that the loss of overtime income constitutes a "special circumstance" that justifies an adjustment to the means test calculation of disposable income. Specifically, the debtor relies on Section 707(b)(2)(B) of the Bankruptcy Code, which provides in pertinent part as follows:

(i)  In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call to active duty in the Armed Forces, to the extent that special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii)  In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii)  The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

§707(b)(2)(B), Bankruptcy Code. Section 707(b)(2)(B) sets forth both procedural and substantive requirements. *In re Haman,* 366 B.R. 307, 312 (Bankr. D. Del. 2007).

Before addressing the substantive issues, it is appropriate to ask whether the debtor has complied with the procedural requirements. Specifically, the debtor is required  (1) to itemize additional expenses or adjustments; (2) to provide documentation of additional expenses or adjustments; (3) to provide a detailed explanation of the special circumstances that make the additional expenses or adjustments necessary and reasonable; and (4) to give oral testimony under oath to the accuracy of the information provided. *In re Pageau,* 383 B.R. 221, 225 (Bankr. D. N.H. 2008). Neither the statute nor the Federal Rules of Bankruptcy Procedure prescribe what form the itemization must take, but at the very least it should be set forth in a written response to the motion to dismiss (in a chapter 7 case) or in a written response to the objection to

6

confirmation (in a chapter 13 case).  In this case, the debtor did not file a written response to the

trustee's objection to confirmation.  Nor, for that matter, did she even offer as a hearing exhibit

anything that might reasonably be construed as an itemization.  All she did was to testify at the

hearing in support of her assertion that she would no longer be receiving overtime.  Additionally,

she did not provide any documentation supporting her assertion of reduced income.  In

particular, she did not offer into evidence a copy of her 2007 tax return, her payroll statements

for the six months leading up to the bankruptcy filing, or her post-petition payroll statements.

Thus, the court had no documents before it that would show, for example, the actual number of

hours for which she had been paid overtime during the period leading up to and since the

bankruptcy petition.  It is true that she did provide testimony under oath attesting to the loss of

overtime—thereby satisfying the requirement in § 707(b)(2)(B)(iii) that she "attest under oath"

to the circumstances—but merely offering testimony without satisfying the predicate

requirements of an itemization and documentation in § 707(b)(2)(B)(ii) does not comport with

the statute.  By contrast, in *Pageau,* the debtor was able to satisfy all of the procedural hurdles

presented by the statute (although not the substantive hurdle) by providing the court with

documentation in the form of copies of her student loan applications and promissory notes that

were relevant to her assertion of special circumstances.  383 B.R. at 222.  Similarly, in *In re*

*Martin,* 371 B.R. 347 (Bankr. C.D. Ill. 2007)—which involved, among other claimed

adjustments, a reduction in income resulting from loss of overtime— the court determined that

the reduction in the debtors' income caused by the reduced overtime available to the husband

and the reduction in hours worked by the wife in her part-time jog was a special circumstance.

*Id*. at 353-54. In making that determination, however, the court had before it what it described as

"a detailed Response" filed by the debtors that included a revised calculation of current monthly

income that covered the six-month period preceding the filing of the motion to dismiss. *Id*.  That

calculation was apparently supported by actual pay statements that had been provided to the

United States Trustee, who did not contest the accuracy of the calculation.   In the present case,

by contrast, the debtor has not provided the court with documentary evidence showing an actual

reduction in take-home pay.

B.

But even if the debtor's failure to comply with the procedural requirements of

§707(b)(2)(B) were not fatal to her claim of special circumstances, the evidence offered falls

short of meeting the substantive standard contemplated by the statute.  A plain reading of the

statute requires the debtor (1) to demonstrate "*special* circumstances, *such as* a serious medical

condition or a call or order to active duty in the armed forces" (emphasis added) that justify the

additional expense or income adjustment; and (2) to demonstrate that there is no reasonable

alternative to making the additional expense or income adjustment.  *Haman,* 366 B.R. 312.  It is

true that the phrase "such as" is not limiting, and that the two circumstances listed in the statute

are not the only ones that would justify an adjustment.  *In re Vaccaiello,* 375 B.R. 809, 813

(Bankr. N.D. Ohio 2007).  At the same time, it seems clear that Congress intended "to set this

bar extremely high, placing it effectively off limits for most debtors."  *In re Haar,* 360 B.R. 759,

760 (Bankr. N.D. Ohio 2007).  *See also In re Martin*, 371 B.R. at 352 (stating that "special

circumstances" must be construed as "uncommon, unusual, exceptional, distinct, peculiar,

particular, additional or extra conditions or facts").  Whether a special circumstance exists must

be made on a case-by-case basis, particularly because of the fact-specific nature of each issue.  *In*

8

*re Turner,* 376 B.R. 370, 378 (Bankr. D. N.H. 2007);  *In re Knight,* 370 B.R. 429, 437 (Bankr.

N.D. Ga. 2007).

Even putting aside the procedural problems already noted, the limited evidence before

the court fails to establish that the reduction in available overtime is likely to be permanent, let

alone that it is "uncommon," "unusual," or "exceptional."  By its very nature, overtime tends to

fluctuate.  Additionally, the debtor did not provide any evidence to show that there was no

reasonable alternative (such as taking on a second job) to mitigate any loss of take-home pay

resulting from a reduction or elimination of overtime.  For that reason, the court cannot find that

the debtor has sufficiently demonstrated "special circumstances" within the meaning of

§ 707(b)(2)(B) that would justify an adjustment to current monthly income.

III.

Because the debtor has not shown sufficient grounds for adjusting current monthly

income, and because her calculated disposable income of $576 (even if she is allowed the

secured debt deduction for the car she proposed to surrender) exceeds the $451 a month she is

proposing to pay into the plan, the court need not reach the specific issue framed by the trustee in

his objection.  Suffice it to note that courts have sharply divided on the question of whether a

deduction from current monthly income can be taken under § 707(b)(2)(A)(iii) for contractual

payments due on debt secured by collateral that the debtor intends to surrender.[2]  Not to

---

[2]  Examples of cases allowing the deduction are *Fokkena v. Hartwick,* 373 B.R. 645, 655
(D.Minn. 2007)*; In re Lindstrom,* 381 B.R. 303, 305 (Bankr. D. Colo. 2007)*; In re Benedetti,*
372 B.R. 90, 95 (Bankr. S.D.Fla 2007); *In re Mundy,* 363 B.R. 407, 412-13 (Bankr. M.D.Pa.
2007); *In re Haman*, 366 B.R. 307, 316-18 (Bankr. D.Del. 2007).  Examples of contrary rulings
are *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); In re Harris, 353 B.R. 304, 309-10
(Bankr. E.D. Okla. 2006); *In re Ray*, 362 B.R. 680, 684 (Bankr. D.S.C. 2007); *In re Love* 350
(continued...)

9

oversimplify the divergent opinions, much depends on whether the court adopts a "snapshot"

view of the means test (which looks solely at the debtor's situation as of the filing date) or adopts

a "forward-looking" view that takes account of developments within the case.  In the present

case, the issue is even more clouded, since it is not clear from the evidence whether the sale of

the car (which the debtor testified she sold the same day as the petition was filed) occurred

before or after the filing of the petition, which took place at 6:42 p.m.  In any event, given the

failure of the debtor's plan to satisfy the disposable income test even if she is allowed to take the

deduction for the automobile she proposed to surrender, the court declines to enter into a

particularly thorny area of statutory construction to render what might be no more than an

advisory opinion.   A separate order will be entered denying confirmation with leave to file a

modified plan.


Date: _____                     _____
                                                  Stephen S. Mitchell
Alexandria, Virginia                              United States Bankruptcy Judge


_____

[2](...continued)
B.R. 611, 615 (Bankr. M.D. Ala. 2006); *In re Burden*, 380 B.R. 194, 200 (Bankr. W.D. Mo. 2007); *In re Coleman*, 382 B.R. 759, 763 (Bankr. W.D. Ark. 2008); *In re McPherson*, 350 B.R. 38, 47 (Bankr. W.D.Va. 2006).  Because of differences between the way subsections (I) and (II) of § 707(b)(2)(A)(iii) are written, a strong argument can be made that, even if the contractual payments can be deducted, the additional deduction for payments to cure arrears would not be allowed in a surrender context, since it is specifically limited to payments "necessary . . . *to maintain possession* of the debtor's primary residence, motor vehicle, or other property *necessary for the support* of the debtor and the debtor's dependents." (emphasis added).  It is difficult to see how property the debtor intends to surrender could fairly be characterized, even in retrospect, as "necessary" for her support.


10

Copies to:

Justin Marcus Reiner, Esquire
Pels, Anderson LLC
4833 Rugby Ave. 4th Floor
Bethesda, MD 20814
Counsel for the debtor

Sharon P. Parulan
6717 Emmanuel Court
Gainesville, VA 20155
Debtor

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee